IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE REYNOLDS, | No. C 05-05201 CRB |
| Plaintiff, | **MEMORANDUM AND ORDER** |
| v. | |
| GERALD VERBECK, et al., | |
| Defendants. | |

This section 1983 lawsuit arises out of defendants' failure to provide plaintiff with his prescription medication when he was arrested in December 2003. Now pending before the Court are the motions of defendants Gerald Verbeck and Rosa Mineo and defendants Michael Forbes and Bayoni Azucenas to dismiss or in the alternative for summary judgment. After carefully considering the papers filed by the parties, and having had the benefit of oral argument, the motions are GRANTED in part and DENIED in part.

## BACKGROUND

**A.   Factual Background**

On December 13, 2003, defendant Alameda County Sheriff Deputy Gerald Verbeck arrested plaintiff at plaintiff's home pursuant to an outstanding warrant for plaintiff's failure to attend traffic school ordered by the Superior Court. First Amended Complaint ("FAC") ¶ 7. According to plaintiff's landlord, who was present at the arrest, plaintiff asked the

arresting officers if he could take his medication and the officers refused. Plaintiff also asked if he could take the medication with him to the jail, or if the officers could bring it, and the officers again refused. Declaration of Craig Lester ¶ 4.

When plaintiff arrived at the Santa Rita Jail, Sheriff's Intake Technician Rosa Mineo performed plaintiff's intake processing and learned he was taking Xanax for a nerve disorder. FAC ¶ 8; Declaration of Rosa Mineo (Mineo Decl.) ¶ 5. Mineo noted the information on the Intake/Receiving Screening Form used for the processing of inmates, and summoned a nurse from Prison Health Services to complete the intake screening. Mineo Decl. ¶ 5. Deputy Verbeck observed plaintiff advise Mineo of his Xanax prescription. Verbeck Decl. ¶ 10-11. Michael Forbes of the Jail's Prison Health Services subsequently asked plaintiff to complete a questionnaire upon which plaintiff wrote that he was under the care of a psychiatrist, Dr. Jung of Pleasanton Community Health Center, who had prescribed him Xanax. FAC ¶ 8. "Plaintiff again requested his prescribed medication, but it was refused." Id.

During plaintiff's court appearance on Monday, December 15, 2003, plaintiff suffered a seizure due to the deprivation of his Xanax medication. The seizure caused him to lose consciousness and fall, severely lacerating his face and knocking out several teeth. Id. ¶ 10. Plaintiff was transported to the hospital where he underwent surgery. As a result of his injuries, he was unable to call his employer, Home Depot, to report that he would be unable to report for work on the afternoon of December 15, 2003. Home Depot terminated plaintiff's employment. Id. ¶ 12.

**B.   Procedural History**

On the last day before the statute of limitations expired, plaintiff filed a complaint against Home Depot as well as Doe defendants. He alleged that Does I through V are Sheriff's employees and agents of Alameda County whose identity was unknown to him and when known the identified parties would be substituted, and that Does VI through X are Police Officer employees and agents of the City of Dublin whose identity was also unknown and when known the identified parties would be substituted.

As of June 2005, no parties, including Home Depot, had been served with the complaint. Plaintiff filed a First Amended Complaint naming the individual defendants on June 9, 2006. After the case was reassigned to the undersigned judge, the individual defendants moved to dismiss based on the statute of limitations and improper service. At the hearing, the Court granted the motion to quash and ordered plaintiff to properly serve defendants. The Court also stated that it was considering imposing sanctions on plaintiff. The Court also intended to deny defendants' motion to dismiss on statute of limitations grounds, but it is apparent from the motions currently pending that defendants do not believe the Court ruled on the issue.

Now pending before the Court is the motion of defendants Verbeck and Mineo to dismiss on statute of limitations grounds and on the grounds that plaintiff does not have evidence sufficient to support liability and, in any event, defendants are entitled to qualified immunity. Defendants Forbes and Azucenas join in the statute of limitations motion, and, in the alternative, move for summary judgment on the ground that plaintiff has no claim against them as a matter of law.

## DISCUSSION

### A.   Statute of Limitations

"For actions under 42 U.S.C. Section 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent that any of these laws is inconsistent with federal law." Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). In California, the statute of limitations is two years. Id. at 927. Plaintiff's FAC alleges that he was injured on December 15, 2003 as a result of defendants' deprivation of his civil rights. See FAC ¶¶ 7-10. The FAC, the first to name the individual defendants, was filed June 9, 2006. Such new claims would typically be barred by the statute of limitations, unless the amendment relates back to date of filing of the original complaint.

A federal cause of action under Section 1983 is governed by the relation back provisions of California state law. Merritt v. County of Los Angeles, 875 F.2d 765, 768 (9th

3

Cir. 1989). The general rule in California is that an amended complaint that adds a new defendant does not relate back to the date of the original complaint and the statute of limitations is applied as of the date the amended complaint is filed. Woo v. Superior Court, 75 Cal. App. 4th 169, 176 (1999). A recognized exception, however, is "the substitution under Section 474 of a new defendant for a fictitious Doe defendant named in the original complaint as to whom a cause of action was stated in the original complaint." Id. "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint . . . and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly. . . ." Cal. C.C.P. § 474 (2006). "If the requirements of section 474 are satisfied, the amended complaint substituting a new defendant for a fictitious Doe defendant filed after the statute of limitations has expired is deemed filed as of the date the original complaint was filed." Woo, 75 Cal. App. 4th at 176 (citing Austin v. Massachusetts Bonding & Ins. Co., 56 Cal.2d 596, 599 (1961)).

Defendants contend that the FAC does not comply with section 474 because defendants were added to the complaint rather than substituted for previously mentioned Doe defendants. Defendants argue that because the FAC retains Does I through V, as well as Does VI through X, along with the newly named individual defendants, it is evident that they were added and not substituted. Defendants also emphasize that the summons issued to Mineo and Verbeck were directed to them as individual defendants rather than as fictitious defendants.

Defendants rely on the Ninth Circuit's decision in Anderson v. Allstate Insurance Co., 630 F.2d 677 (1980). There the court held that "the district court was not clearly wrong" in concluding that the amendment did not relate back to the date of filing of the original complaint because the defendants were added, not substituted. Id. at 683. The amended complaint added defendants' names to the list of previously named individual and corporate defendants and retained the listing of the Doe defendants. Id. In addition, the summons served on the defendants did not list them as Doe defendants. Id. The court rejected the

4

argument that plaintiffs' failure to insert defendants as defendants previously named should have been treated as a technical pleading defect. Id. The court stated that "'some discipline in pleading is still essential to the efficient processing of litigation.'" Id. (quoting Ingram v. Superior Court, 98 Cal. App. 3d 483, 491 (3rd Dist. 1979)).

Since Anderson however, California courts have been more lenient in applying the requirements of section 474. Faced with similar facts to those in Anderson, the court in Woo held that the defendant was substituted for a fictitious Doe defendant. Woo, 75 Cal. App. 4th at 177. In Woo, the plaintiff did not identify the defendant as a substitute for a previously named fictitious defendant and the summons identified him as an individual and not as a defendant previously sued under a fictitious name. Id. at 176. The court specifically addressed the admonition in Ingram regarding discipline in pleading and indicated that "the courts of this state have considered noncompliance with the party substitution requirements of section 474 as a procedural defect that could be cured and have been lenient in permitting rectification of the defect." Id. at 177 (citations omitted). The court, however, did indicate that "in other cases the courts may well require strict compliance and counsel are advised to follow the simple correct procedure for substituting a named defendant for a fictitious Doe defendant." Id.

The Ninth Circuit has indicated that strict compliance with section 474 is not required. Lindley v. Gen. Elec. Co., 780 F.2d 797, 801 (1986) ("[W]e do not agree that strict compliance with section 474 is required"). "California's policy in favor of litigating cases on the merits requires that the fictitious name statute be liberally construed." Id. (citing Barnes v. Wilson, 40 Cal. App. 3d 199, 203 (1974)). In Lindley, however, the plaintiffs eliminated the Doe defendants as named parties and stated in their Amended Memorandum of Points and Authorities re Motion to Add Party Defendants that the parties were added in lieu of the Doe designation. Id. at 801-02.

In any event, the determination of whether the new defendants were added or substituted is left to the Court's discretion. Here, plaintiff did not reduce the number of Doe defendants in the caption and did not make any reference to substituting the defendants for

5

any previously mentioned Doe defendants; indeed, the FAC still alleges that the identities of Does I through V and VI through X are unknown and when known, the identified parties will be substituted for the defendants Doe. See FAC ¶¶ 2-3. Additionally, the initial summons named the defendants as individual defendants rather than as defendants previously sued under fictitious names.

Although plaintiff made no attempt to comply with section 474, even after defendants brought the error to plaintiff's attention, and in fact erroneously contends that he does not need to comply with section 474, the Court is reluctant to dismiss the claims with prejudice. While plaintiff has not been diligent in prosecuting this action, the Court prefers to decide this case, and in particular, this type of lawsuit, on the merits rather than on counsel's failure to follow procedural rules. Accordingly, the Court will grant plaintiff leave to file a Second Amended Complaint that complies with section 474 and expressly substitutes the individual defendants for the proper Doe defendants.

### B.      Summary Judgment Motions

In the alternative, the individual defendants move for summary judgment on the ground that plaintiff cannot show that they are liable for his injuries.

#### 1.      Summary Judgment Standard

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A party moving for summary judgment that does not have the ultimate burden of persuasion at trial (usually the defendant) has the initial burden of producing evidence negating an essential element of the non-moving party's claims *or* showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party does not satisfy its initial burden, the non-moving party has no obligation to produce anything and summary judgment must be denied. If, on the other hand, the moving party has satisfied its initial burden of production, then the non-moving party

1  may not rest upon mere allegations or denials of the adverse party's evidence, but instead
2  must produce admissible evidence that shows there is a genuine issue of material fact for
3  trial. Nissan Fire & Marine Ins. Co., 210 F.3d at 1102. A genuine issue of fact is one that
4  could reasonably be resolved in favor of either party. A dispute is "material" only if it could
5  affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477
6  U.S. 242, 248-49 (1986).

### 2. Legal Standard

To prevail on a section 1983 claim based on prison medical treatment, a plaintiff must show "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1095 (9th Cir. 2006) (internal quotation marks and citation omitted). "First, the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (citation omitted). "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." Id. This prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id.

In this case, it appears plaintiff was detained before being convicted of a crime; thus, his right to adequate medical care derives from the due process clause of the Fourteenth Amendment rather than the Eighth Amendment. See Gibson v. County of Washoe, N.W., 290 F.3d 1175, 1189 (9th Cir. 2002). The due process right under the Fourteenth Amendment, however, is at least as great as the corresponding right under the Eighth Amendment. Gibson, 290 F.3d at 1187.

### 3. The Motions

#### a. Forbes and Azucenas

Defendants Forbes and Azucenas, both employees of Prison Health Services, Inc., move for summary judgment on the ground that plaintiff does not allege and cannot prove that they were deliberately indifferent to plaintiff's medical needs. Azucenas points out that the FAC makes no allegations as to him, other than to list him as a defendant, and plaintiff

does not offer any evidence or even allegations against him in response to the motion to dismiss or in the alternative for summary judgment. Accordingly, Azucenas's motion to dismiss is GRANTED without leave to amend.

The FAC alleges that defendant Forbes gave plaintiff a questionnaire "upon which Plaintiff wrote that he" was under the care of a psychiatrist and had a prescription for Xanax. FAC ¶ 8. The declarations of defendants Mineo and Verbeck give rise to an inference that Forbes was a prison nurse. Forbes does not dispute that plaintiff did not receive his medication, despite plaintiff having notified Forbes–a nurse–that he was on such medication; indeed, Forbes did not submit a declaration in support of his motion. In the absence of a declaration as to what Forbes did once he learned that plaintiff was taking a prescription medication, the Court cannot conclude that he was not deliberately indifferent as a matter of law. Accordingly, at this early stage in the proceedings, Forbes' motion must be denied.

### b.   Verbeck and Mineo

The FAC alleges, and Deputy Mineo concedes, that while Deputy Mineo was screening plaintiff at the Jail, plaintiff informed Mineo that he had a prescription for Xanax for a nerve disorder. Deputy Mineo moves for summary judgment on the ground that such allegation is wholly insufficient to support a claim for deliberate indifference, especially in light of the undisputed evidence that once Deputy Mineo learned of plaintiff's prescription, the Deputy summoned a Prison Health Services nurse to complete plaintiff's intake process. Such conduct does not rise to the level of deliberate indifference as a matter of law.

Plaintiff offers evidence that when Deputy Verbeck arrested plaintiff at his home, plaintiff asked to take his medicine and Verbeck said no. He also offers evidence that when Deputy Verbeck would not allow him to take his medicine, plaintiff asked that the medicine be taken with him to jail and, again, Verbeck said no without any further inquiry. Indeed, Deputy Verbeck refused even when plaintiff explained that he did not need to carry the medicine himself, but asked the officer to carry it to the jail so that jail personnel could verify from the bottle the name of the prescribing doctor, the dosage amount, and times that it should be taken. Lester Decl. ¶ 4.

Verbeck denies that plaintiff asked about his medication, but, recognizing that the Court must accept Lester's testimony, argues that even if he did so refuse, such conduct is insufficient to support a finding of deliberate indifference. He declares that it was against the policy of the Alameda Country Sheriff's Office to allow a detainee to take medication, and contends that under Jail policy, "medication brought by a prisoner would not be given to the prisoner, but rather, if medication were required it would be obtained and administered from a reliable and verifiable source such as the jail pharmacy." Declaration of Gerald Verbeck ¶ 13. He also argues that, at a minimum, he is entitled to qualified immunity.

Verbeck does not explain what the Sheriff Department's policy was with respect to an arrestee's request that the officer transport his medication to the jail to facilitate the continuation of medical care. Such a request is reasonable on its face, especially when the detainee is arrested at home on a Saturday morning; jail personnel will most likely not be able to contact the prescribing doctor to verify the prescription. And there is nothing in the record that suggests that the Jail would give a detainee a prescription medicine based solely on the detainee advising jail personnel that he had such a prescription. In any event, on the very limited record before the Court, the Court cannot conclude that Deputy Verbeck's flat refusal to bring plaintiff's medication to the jail did not amount to deliberate indifference. The Court recognizes that Deputy Verbeck denies that plaintiff even told him about his medication, but in light of Lester's declaration, the Court must assume that plaintiff did make such a request.

Deputy Verbeck also argues that, at a minimum, he is entitled to qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law;" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Saucier v. Katz, 533 U.S. 194, 202 (2001) (internal quotation

9

marks and citation omitted). In light of the absence of any evidence of the policy surrounding prescription medications and arrests, the Court must assume that it is the Department's policy to transport such medication to the jail, especially when the arrest is made on a Saturday and jail personnel will most likely be unable to reach an arrestee's physician until Monday. The Court makes this assumption because any policy to the contrary would be unreasonable, at least based on the limited information before the Court. Deputy Verbeck's conduct, then, would amount to an intentional violation of Department policy. In these circumstances, the Court cannot conclude that Deputy Verbeck is entitled to qualified immunity. The record is simply too thin and there are too many unknowns.

### C.    Attorneys' Fees and Costs

At the hearing on defendants' motion to dismiss, the Court advised the parties that it was considering imposing sanctions on plaintiff for his repeated failure to abide by orders of the Court. Upon further reflection the Court concludes that such failures, while wasting the Court's time, did not prejudice defendants as they had not yet been served.

### CONCLUSION

Plaintiff's claim against defendant Azucenas is DISMISSED without leave to amend, and defendant Mineo's motion for summary judgment is GRANTED. The motions of defendants Verbeck and Forbes are DENIED without prejudice.

Plaintiff shall file a Second Amended Complaint which properly substitutes defendants Verbeck and Forbes within 30 days of the date of this Order. Service may be made on defendants' counsel and defendants need not answer. Plaintiff is warned that his failure to comply with the above order will result in dismissal of Verbeck and Forbes on statute of limitations grounds.

**IT IS SO ORDERED**.

Dated: Dec. 15, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE